165 Cal.App.4th 646 (2008)
THE PEOPLE, Plaintiff and Respondent,
v.
MICHAEL JEROME SUTTON et al., Defendants and Appellants.
No. B195337.
Court of Appeals of California, Second District, Division Three.
July 30, 2008.
CERTIFIED FOR PARTIAL PUBLICATION[*]
*648 William L. Heyman, under appointment by the Court of Appeal, for Defendant and Appellant Michael Jerome Sutton.
Jennifer L. Peabody, under appointment by the Court of Appeal, for Defendant and Appellant Willie J. Jackson.
Michael P. Judge, Public Defender, and John Hamilton Scott, Deputy Public Defender, for Public Defender of Los Angeles County as Amicus Curiae on behalf of Defendants and Appellants.
Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Steven D. Matthews and David E. Madeo, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION
ALDRICH, J.

INTRODUCTION
The joint trial of defendants and appellants Michael Jerome Sutton and Willie J. Jackson began six days after the 60-day statutory deadline in Penal *649 Code section 1382.[1] The trial court continued the trial as to both defendants because Jackson's counsel was engaged in trial on another matter. On appeal, defendants contend that good cause did not exist to continue the trial beyond the statutory deadline. In the published portion of this opinion, we hold that an appointed counsel's present engagement in another matter is good cause to continue the joint trial of jointly charged defendants. In the nonpublished portion of this opinion, we reject defendants' contention that the trial court erred in excluding evidence, although we agree with Sutton's other contention that there are errors in his sentence. We therefore reverse and remand this matter as to Sutton with respect to the sentencing errors only. We otherwise affirm the judgment as to both defendants.

FACTUAL AND PROCEDURAL BACKGROUND

I. Factual background.

On May 31, 2006, Officer Anthony Jackson, a member of the narcotics division buy team, was working undercover at 7th and Ceres in Los Angeles. Defendant Jackson was counting money on Ceres. The officer looked at defendant Jackson, who approached the officer and asked what he wanted. The officer said he wanted "a 20," meaning $20 worth of narcotics. Defendant Jackson said he had to get it; he crossed the street to a waist-high camping tent, where Sutton was waiting.
Sutton and defendant Jackson talked, although the officer could not overhear their conversation. Sutton opened a white bottle out of which he poured an off-white solid substance into his hand and gave it to defendant Jackson. Defendant Jackson walked back to the officer and asked him for the money. The officer gave defendant Jackson a prerecorded $20 bill, and defendant Jackson gave the officer an off-white solid substance resembling rock cocaine. As the officer walked away, he signaled to his partners that the buy was complete.
Jackson was arrested. Officers recovered $14 from his pants pockets. Sutton was arrested. Officers recovered an off-white substance resembling rock cocaine, a white canister also containing an off-white substance resembling cocaine, and $44 from him. Detective Vip Kanchanamongkol, who was in charge of the operation, compared a $20 bill recovered from Sutton to the prerecorded bill Officer Jackson used to buy the drugs from defendant Jackson. The bills matched. Testing confirmed that the substance Officer Jackson bought was 0.33 grams of cocaine base and that the substance recovered from Sutton was 0.99 grams of cocaine base.

*650 II. Procedural background.

Trial was by jury. On October 5, 2006, the jury found Sutton and Jackson guilty of count 1, sale of a controlled substance, cocaine base (Health & Saf. Code, § 11352, subd. (a)). The jury also found Sutton guilty of count 2, possession for sale of a controlled substance, cocaine base (Health & Saf. Code, § 11351.5).
On October 24, 2006, the trial court sentenced Jackson to the midterm of four years on count 1.
On November 21, 2006, the trial court sentenced Sutton to the upper term of five years on count 1. The court imposed an additional three years under Health and Safety Code section 11370, subdivision (a), based on a prior felony conviction for violating Health and Safety Code section 11351.5 and an additional year under Penal Code section 667.5, subdivision (b). The court sentenced him to a concurrent four-year term on count 2. The court dismissed one prior conviction from 1990.
This appeal followed.[2]

DISCUSSION

I. The six-day delay did not violate defendants' statutory right to a speedy trial.[3]
Because their trial was delayed beyond the statutory deadline in section 1382, Sutton and Jackson contend that their right to a speedy trial was violated.[4] We disagree.

A. Additional facts.

The People filed a felony complaint on June 2, 2006, charging Jackson and Sutton with sale of a controlled substance (Health & Saf. Code, § 11352, *651 subd. (a)) and charging Sutton with sale of cocaine base (Health & Saf. Code, § 11351.5). On June 16, noting that it was "10 of 10" and that defendants had been inadvertently sent to the wrong courthouse, the trial court dismissed the matter. Sutton was released from custody, but was placed in custody again three days later.
By a felony complaint, the People refiled the matter on June 19, 2006. An information was filed on July 21, 2006, charging Sutton and Jackson again with violating Health and Safety Code section 11352, subdivision (a), and Sutton with violating Health and Safety Code section 11351.5. Sutton and Jackson were arraigned that same day, July 21, and trial was scheduled for September 11, 2006, as day 52 of 60. The trial date, however, was vacated and set for September 12, as day 53 of 60. On September 12, all parties announced ready for trial, although Jackson's appointed counsel said he might be engaged in trial on another case.[5] The case was transferred to department 100 for trial assignment on September 15, as day 56 of 60.
On September 15, 2006, Jackson's counsel said he was engaged in trial, but he would be available on the 19th. The trial court asked Jackson if it was "agreeable with you that you come back here on September 19th and have your trial within two days of that date?" Jackson said, "As long as no time is being waived," and "I don't want to waive time," to which the court replied, "That's fine." The court trailed the matter to September 18, as day 59 of 60.
On September 18, 2006, all parties announced ready, except for Jackson's counsel, who was still engaged in trial. On Jackson's continuing motion to trail, the court trailed the trial to September 19. The court noted that there was no time waiver from either defendant.
On September 19, 2006, day 60 of 60, Jackson's counsel said he was still engaged in trial. The court again noted that defendants were not waiving time, and Sutton expressly asked when the 60 days started to run. Noting that Jackson's counsel was still engaged in trial on another matter, the court found good cause to continue the matter as to both defendants.
The next day, September 20, 2006, day 61 of 60, Jackson's counsel was still in trial but he nevertheless made "a pro forma" motion to dismiss. The court said it was not a good faith motion to dismiss because he was also making a motion to continue.[6] The court again found good cause to continue the matter based on Jackson's counsel being in trial.
*652 The following day, September 21, 2006, Jackson's counsel was still engaged in trial. The trial court again found good cause to trail the case until September 22. Sutton asked if this meant he waived time. The court said, "You haven't waived one second. I find good cause because one of the two counsel are engaged in trial, which is good cause to trail the case."
On September 22, 2006, Jackson's counsel asked to trail the matter to the 25th, because he was still engaged in trial. The trial court granted the motion, and it found that there was no time waiver. Sutton personally addressed the court:
"Defendant Sutton: I'm confused.
"The court. What are you confused about, Mr. Sutton?
"Defendant Sutton: I'm told you have 60 days to start trial. Sixty days was up yesterday, and we've not waived any time. The minute order
"The court: That's excellent. And I found good cause to put your case over.
"Defendant Sutton: What's the good cause? What's the good cause?
"The court: The good cause is that one of the lawyers is engaged and can't try two cases at one time. And if one of the lawyers is engaged on a case with two defendants, it's good cause to put both over. [¶] Now, do you want a further explanation than that?
"Defendant Sutton: Yeah, but the minute order show we never waived any time. I'm confused.
"The court: You're not confused. You just don't like it.
"Defendant Sutton: Well, that's a fact.
"The court: That's a fact. [¶] And you know what my answer to you is? Too bad. See you on Monday."
On September 25, 2006, all parties announced ready for trial, and the case was transferred to department 124 for trial. Noting that it was day 66 of 60 and that his client never waived time, Sutton's counsel cited, among others, People v. Escarcega (1986) 186 Cal.App.3d 379 [230 Cal.Rptr. 638] (Escarcega), and moved for dismissal based on the lack of a speedy trial. The People responded, "The People have answered ready since the first day this case was in Department 100. It is my recollection on each and every occasion *653 when defense counsel for Mr. Sutton was asked if he wanted to waive time for the convenience or because his co-counsel was in fact in trial he did. In light of that fact and in light of the fact the People have been ready each and everyday, the People would oppose the motion."
Sutton's counsel corrected the district attorney: "I never waived time. I emphasized on the record that Mr. Sutton did not want to waive time. The court was aware of that. That is why they brought Mr. Sutton everyday from a week ago, over a week ago, on a daily basis in case a trial court opened up. It was over our decision not to waive time. We did not waive time." The court said good cause to trail the case had been found because cocounsel was engaged in another matter, and it therefore denied the motion.[7]

B. There was good cause to continue defendants' trial.

(1) The California Constitution guarantees a criminal defendant's right to a "speedy public trial." (Cal. Const., art. I, § 15; see also Pen. Code, § 1050.)[8] Section 1382 interprets the state constitutional right to a speedy trial. (People v. Johnson (1980) 26 Cal.3d 557, 561 [162 Cal.Rptr. 431, 606 P.2d 738] (Johnson); People v. Martinez (2000) 22 Cal.4th 750, 766 [94 Cal.Rptr.2d 381, 996 P.2d 32] [the statutory speedy trial rights are supplementary to and a construction of the state constitutional speedy trial guarantee].) Section 1382 provides that absent a showing of good cause, waiver or consent, a defendant accused of a felony is entitled to a dismissal of charges if the matter is not brought to trial within 60 days of arraignment. (§ 1382; Johnson, at p. 563.) What constitutes good cause to continue a case depends on the circumstances of each case, and the issue is reviewed on appeal under an abuse of discretion standard. (Johnson, at p. 570; Hollis v. Superior Court (1985) 165 Cal.App.3d 642, 645 [211 Cal.Rptr. 649].)
*654 (2) Examples of good cause to delay a trial include an unexpected illness or unavailability of counsel or witnesses, delay caused by a defendant's conduct, and delays for the defendant's benefit. (Johnson, supra, 26 Cal.3d at p. 570.) The preference for a joint trial of jointly charged defendants can also constitute good cause to delay a trial beyond the statutory deadline. That preference is in section 1098, which provides that "[w]hen two or more defendants are jointly charged with any public offense, whether felony or misdemeanor, they must be tried jointly, unless the court order[s] separate trials." (See also Cal. Const., art. I, § 30, subd. (a) ["This Constitution shall not be construed by the courts to prohibit the joining of criminal cases as prescribed by the Legislature or by the people through the initiative process."]; § 1050.1 [discussed post].)
Notwithstanding the clear statutory preference for joint trials, Sutton and Jackson contend that the preference cannot here trump their statutory speedy trial rights, based on Johnson, supra, 26 Cal.3d 557. In Johnson, the defendant's appointed counsel, over his client's objection, asked for a continuance of trial because he was engaged in trial on other matters. He explained that he was presently engaged in another trial and that he had two older cases he felt he should try before defendant Johnson's case. (Id. at pp. 563-564 & fn. 2.) The court found good cause to continue the trial. On the continued trial date, defense counsel asked for another continuance, again detailing his schedule in connection with three other cases. (Id. at pp. 563-564 & fn. 3.) Over the defendant's objection, the court again found good cause to continue the matter. The defendant was finally brought to trial 144 days after the information was filed. (Id. at p. 565.)
(3) Johnson made two holdings. First, when a client expressly objects to waiving his or her right to a speedy trial under section 1382, "counsel may not waive [the speedy trial] right to resolve a calendar conflict when counsel acts not for the benefit of the client before the court but to accommodate counsel's other clients." (Johnson, supra, 26 Cal.3d at pp. 561-562; see also id. at p. 567 ["consent of appointed counsel to a postponement of trial beyond the statutory period, if given solely to resolve a calendar conflict and not to promote the best interests of his client, cannot stand unless supported by the express or implied consent of the client himself"].)[9] Second, in the case of an *655 incarcerated defendant, the public defender's inability to try a case within the statutory time because of conflicting obligations does not constitute good cause to avoid dismissal of the charges. (Id. at pp. 561-562.)
Although Johnson's second holding refers broadly to appointed counsel's "conflicting obligations," the factual scenario on which this holding was based is different than the one before us. In Johnson, the defendant's trial counsel delayed Johnson's first trial date because counsel was engaged in trial on another matter and because he felt his other cases had precedence over Johnson's. On all later trial dates Johnson's trial counsel based his requests for continuance only on conflicting trial schedules of his other clients. He was thus engaging in case management, to Johnson's detriment. Here, Jackson's trial counsel, before the statutory deadline passed, initially announced ready for trial, although he said he might be engaged in trial on another case. He thereafter became engaged in that other trial. While Jackson's counsel was engaged in the other matter, Sutton and Jackson's trial trailed day to day, until their case was transferred for trial on September 25, six days after the 60-day deadline in section 1382. A situation such as this, in which trial counsel is presently engaged in another matter and the matter before the court trails for a minimal number of days, is thus distinguishable from Johnson. Trial counsel here was actually in trial on another matter and was not delaying this matter so that he could try other cases ahead of it.[10]
The facts here are also distinguishable from those in Sanchez v. Superior Court (1982) 131 Cal.App.3d 884 [182 Cal.Rptr. 703] (Sanchez). The petitioner and two codefendants in Sanchez were jointly charged. (Id. at p. 887.) The codefendant's counsel told the court he was engaged in another criminal trial and "was assigned to two other `must-go' criminal trials immediately thereafter." (Ibid.) The trial court found good cause to continue petitioner's trial along with his codefendant's trial.[11] Relying on Johnson, Sanchez said that "on balance, whatever unspecified `interests of justice' might be promoted by a joint trial in the underlying prosecution, the state interest cannot be permitted to subordinate the conflicting right of [a defendant] to a trial *656 within the 60-day period." (Sanchez, at p. 893.)[12]Sanchez mirrors more closely the facts in Johnson than the ones before us. It involved trial counsel's attempts to manage his caseload to the defendant's detriment.
Arroyo v. Superior Court (2004) 119 Cal.App.4th 460 [14 Cal.Rptr.3d 462], is also distinguishable. Arroyo and his codefendant were arraigned on different days. Arroyo's trial was set for December 15, 2003, but his codefendant, who had been arraigned on a later date, was not scheduled to be tried until January 26, 2004. The trial court continued Arroyo's trial to January 26 so that he could be jointly tried with his codefendant. The Court of Appeal held that Arroyo's speedy trial rights were violated. The trial court erred in relying on "maintaining joinder alone as the sole reason for continuance, without regard to any competing factors." (Id. at p. 467.) Arroyo, however, did not involve, as here, the unavailability of codefendant's counsel due to his present engagement in trial on another matter.
(4) Thus, there was good cause to continue the trial of Jackson. The question then becomes whether there was also good cause to continue the trial of the jointly charged defendant, Sutton. Johnson does not answer this question directly, because it did not involve jointly charged defendants. But our California Supreme Court has otherwise noted that where "a continuance is granted upon good cause to a codefendant the rights of the other defendants are generally not deemed to have been prejudiced." (People v. Teale (1965) 63 Cal.2d 178, 186 [45 Cal.Rptr. 729, 404 P.2d 209] [continuance premised on codefendant's counsel's need to prepare for trial], revd. on other grounds by Chapman v. California (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824]; see also Ferenz v. Superior Court (1942) 53 Cal.App.2d 639 [128 P.2d 48] [cited with approval in Teale and finding that the unavailability of two defendants was good cause to continue for 22 days the joint trial of nine defendants in a complex trial].)
*657 (5) Greenberger, supra, 219 Cal.App.3d 487, also held that the preference for joint trials can constitute good cause to delay a trial beyond the statutory time. Greenberger was a multi-defendant-murder trial in which defendant Greenberger refused to waive time, although her codefendants moved to continue trial based on a need for pretrial investigation. Greenberger was ultimately tried six months beyond the statutory time. The court found that although there are "no magic calipers marking the exact reach of good cause delay," good cause existed based on a consideration of factors including length of delay, seriousness of charges, complexity of the case, prejudice to the defendant, the reason for the delay, witness hardship, and burden on the courts. (Id. at pp. 502, 505-506; see also Hollis v. Superior Court, supra, 165 Cal.App.3d 642 [defendant's right to a speedy trial was not violated by a continuance of 100 days past the statutory time based on codefendant's assertion he needed more time to prepare for trial].)
Greenberger recognized that the preference for a joint trial "encompasses varied and significant interests. So significant, in fact, that they may serve as counterweights to a defendant's right to confront witnesses [citation], his privilege against self-incrimination [citation], his right to exclude prejudicial character evidence [citation], and others [citations]." (Greenberger, supra, 219 Cal.App.3d at p. 499.) The court then said that "if the precipitating cause for trial delay is justifiable, such as codefendants' need to adequately prepare for trial, then the section 1098 joint trial mandate constitutes good cause to delay the trial of an objecting codefendant." (Id. at p. 501, fn. omitted.) As we have explained, the precipitating cause for delaying Jackson's trial here was justifiable, namely, his counsel's present, and brief, engagement in trial on another matter. Under such a circumstance, the joint trial mandate constituted good cause to delay Sutton's trial as well.
Section 1050.1 underscores the soundness of this conclusion. That section provides: "In any case in which two or more defendants are jointly charged in the same complaint, indictment, or information, and the court or magistrate, for good cause shown, continues the arraignment, preliminary hearing, or trial of one or more defendants, the continuance shall, upon motion of the prosecuting attorney, constitute good cause to continue the remaining defendants' cases so as to maintain joinder. The court or magistrate shall not cause jointly charged cases to be severed due to the unavailability or unpreparedness of one or more defendants unless it appears to the court or magistrate that it will be impossible for all defendants to be available and prepared within a reasonable period of time."[13] Although we do not directly rely on *658 section 1050.1, because the prosecutor here did not make a motion under it, the statute states a clear preference for joint trials under situations similar to the one before us.[14] Under section 1050.1, if good cause exists to continue the trial of defendant No. 1, then good cause exists to continue the trial of defendant No. 2 to maintain joinder. As we have said, good cause existed to continue Jackson's trial, therefore, had a motion under section 1050.1 been expressly made, good cause would have existed to continue Sutton's trial as well under that statute.
(6) In reaching our conclusion that defendants' speedy trial rights were not violated by the six-day delay, we are mindful that "neither a defendant's constitutional right to trial within the 60-day period nor the mandate for joint trial are absolute, but are subject to the discretion of the trial court in evaluation of conflicting policy and pragmatic considerations." (Sanchez, supra, 131 Cal.App.3d at p. 891.) Those policy and pragmatic considerations here include the relative brevity of the delay (six days), and the not insignificant burden on the court system in conducting two trials. We thus take note of Justice Richardson's cautionary statement in his dissenting opinion in Johnson: "The problem of overcrowded courtrooms is a major concern to all who are involved in the judicial process. . . . We may, on a case-by-case basis and when appropriate, afford relief by dismissal to those individual defendants who have been denied their right to a speedy trial. We should not, however, by judicial improvisation, and in the absence of prejudice to a defendant, particularly in matters so closely affecting the public safety and welfare, impose our own theories of management on local court systems, thereby reaching arbitrary results which are neither constitutionally compelled nor in the public interest." (Johnson, supra, 26 Cal.3d at p. 586 (dis. opn. of Richardson, J.).)

II.-IV.[*]

*659 DISPOSITION
Defendant Michael Sutton's motion for judicial notice is granted. As to Michael Sutton, the judgment is reversed and remanded as to the sentence enhancements imposed under Penal Code section 667.5, subdivision (b), and under Health and Safety Code section 11370.2, subdivision (a). The judgment as to both defendants is otherwise affirmed.
Klein, P. J., and Kitching, J., concurred.
NOTES
[*] Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of parts II., III. and IV. of the Discussion.
[1] All further undesignated statutory references are to the Penal Code.
[2] We filed an opinion in this case on March 26, 2008, but, on our own motion, we granted rehearing and ordered the parties to file supplemental briefs addressing section 1050.1.
[3] In Jackson's opening brief he joined any contention Sutton raised that may be "applicable and beneficial" to him. He did not separately brief the speedy trial issue. Jackson's appellate counsel, in response to our rehearing order, thereafter submitted a supplemental brief in which she argued that the speedy trial issue was indeed applicable to her client. We therefore will consider the issue as to Jackson.
[4] The argument is based solely on section 1382. Sutton does alternatively contend that his trial counsel rendered ineffective assistance of counsel by, among other things, failing to object to continuing trial.
[5] Sutton also had appointed counsel. The parties do not dispute that Sutton and Jackson remained incarcerated during these proceedings.
[6] Sutton's counsel was not present for this portion of the proceedings. He had called and said he would be late.
[7] Although the prosecutor said that Sutton had waived time and various minute orders state he waived time, the record is clear he did not. Therefore, Sutton does not have a claim of ineffective assistance of counsel based on his trial counsel's failure to object to the delay of trial. The People also do not argue on appeal that there was such a waiver.
[8] Section 1050, subdivision (a), provides: "The welfare of the people of the State of California requires that all proceedings in criminal cases shall be set for trial and heard and determined at the earliest possible time. To this end, the Legislature finds that the criminal courts are becoming increasingly congested with resulting adverse consequences to the welfare of the people and the defendant. Excessive continuances contribute substantially to this congestion and cause substantial hardship to victims and other witnesses. Continuances also lead to longer periods of presentence confinement for those defendants in custody and the concomitant overcrowding and increased expenses of local jails. It is therefore recognized that the people, the defendant, and the victims and other witnesses have the right to an expeditious disposition, and to that end it shall be the duty of all courts and judicial officers and of all counsel, both for the prosecution and the defense, to expedite these proceedings to the greatest degree that is consistent with the ends of justice. . . ."
[9] In reaching this conclusion, the Johnson majority distinguished Townsend v. Superior Court (1975) 15 Cal.3d 774 [126 Cal.Rptr. 251, 543 P.2d 619]. Townsend held that a defendant's appointed counsel has the power to control judicial proceedings and to waive nonfundamental rights. Thus, consent of counsel alone, without that of the client, satisfies section 1382; in other words, counsel can waive the client's rights under section 1382. (Townsend, at p. 780; Johnson, supra, 26 Cal.3d at p. 568.) Although it appears that Johnson departs from Townsendindeed the Johnson majority strongly criticized Townsendthe majority did not expressly overrule it. Justice Richardson, who authored Townsend, dissented from the majority's holding with respect to the right to speedy trial issue, and described the majority opinion as a reversal of Townsend. (Johnson, at pp. 581-582.)
[10] Because we conclude that good cause existed to continue Jackson's trial based on his counsel's unavailability, we need not determine whether Jackson waived or expressly or impliedly consented to the continuance under section 1382, subdivision (a)(2)(A) and (B), an issue which is not raised by any party.
[11] The record is not clear how far past the statutory deadline trial occurred, but it appears it was somewhere between 7 and 21 days. (Sanchez, supra, 131 Cal.App.3d at p. 888.)
[12] We relied on Sanchez in Escarcega, supra, 186 Cal.App.3d at page 386, footnote 4, to reject the People's contention that their and the codefendants' desire "to avoid needless duplication or to obtain an expeditious disposition are relevant factors in determining whether defendant's right to a speedy trial was violated." We said that the "preference for a joint trial of jointly charged defendants does not constitute good cause to delay one defendant's trial beyond the time period set forth in Penal Code section 1382, subdivision [(a)(2)]." (Escarcega, at p. 386, fn. 4.) To the extent Escarcega can be interpreted as finding that the preference for a joint trial does not, under any circumstance, constitute good cause to continue a trial past the statutory time, such an interpretation is "overly broad." (Greenberger v. Superior Court (1990) 219 Cal.App.3d 487, 495 [267 Cal.Rptr. 849] (Greenberger).)
[13] Proposition 115, adopted by the voters and made effective June 6, 1990, added section 1050.1, among others, to the Penal Code.
[14] See generally, A.A. v. Superior Court (2003) 115 Cal.App.4th 1, 4, 6 [9 Cal.Rptr.3d 1] (§ 1050.1 is not a "`joinder'" statute; if anything, it is a "`continuance'" statute that gives the People good cause to seek a continuance of the entire case when the court grants a continuance to two or more defendants in a jointly charged case); In re Samano (1995) 31 Cal.App.4th 984, 995 [37 Cal.Rptr.2d 491] (dissenting Justice Stone noting that § 1050.1 "gives the prosecution the right to maintain joinder" (dis. opn. of Stone, J.)).
[*] See footnote, ante, page 646.