Filed 4/22/14  Barney v. JPMorgan Chase Bank CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)


| | |
|---|---|
| GLENN J. BARNEY, | C071053 |
| Plaintiff and Appellant, | (Super. Ct. No. SCV0030094) |
| v. | |
| JPMORGAN CHASE BANK, N.A., et al., | |
| Defendants and Respondents. | |


Plaintiff Glenn J. Barney appeals from a judgment of dismissal entered after the trial court sustained, without leave to amend, a demurrer to his first amended complaint filed by defendants JPMorgan Chase, N.A. (JPMorgan) and California Reconveyance Company (CRC).  Plaintiff contends the judgment must be reversed because (1) he did not stipulate to the demurrer being heard by a commissioner; (2) the trial court improperly took judicial notice of disputed factual statements contained in various recorded documents; (3) the operative first amended complaint states a cause of action for quiet title; and (4) the trial court abused its discretion in dismissing the first amended complaint without leave to amend.

1

We shall conclude that the trial court properly rejected plaintiff's "non-stipulation" to the commissioner as untimely, and that there is no indication in the record that the trial court took judicial notice of disputed factual statements in the documents it noticed. We shall further conclude that the trial court properly sustained defendants' demurrer to the quiet title cause of action because it fails to allege a specific factual basis for its claim that defendants lacked the authority to initiate the underlying foreclosure proceeding. We shall further conclude that the trial court did not abuse its discretion in dismissing the first amended complaint without leave to amend because there is no reasonable possibility the defects in the first amended complaint can be cured by amendment. Accordingly, we shall affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

In June 2006 plaintiff obtained a construction loan in the amount of $1,254,500 from JPMorgan. Plaintiff executed a promissory note for that amount. The loan was secured by a deed of trust, which encumbered real property located at 25300 Campbell Creek Place, Colfax, California. The deed of trust identified JPMorgan as the lender and beneficiary and Placer Title Company as the trustee. The loan was converted to a conventional loan in November 2007.

On June 5, 2008, a substitution of trustee designated First American Loanstar Trustee Services (First American) as trustee in place of Placer Title Company. The substitution lists JPMorgan as "the present Beneficiary" under the deed of trust and was executed by Chet Sconyers on behalf of JPMorgan.

---

[1] "Because this appeal arises in connection with a demurrer, we look to the 'properly pleaded factual allegations' of the operative complaint 'read in light of' any 'judicially noticeable facts' and 'factual concessions' of the plaintiff." (*Hernandez v. City of Pomona* (2009) 46 Cal.4th 501, 506, fn. 1.)

2

On June 12, 2008, an assignment of deed of trust was recorded. By that document, JPMorgan is purported to have assigned all of its beneficial interest under the deed of trust to Chase Home Finance LLC (Chase). The assignment was recorded at the request of First American, which further requested the assignment be mailed to it in Fort Worth, Texas "when recorded." The assignment was executed on June 5, 2008, by Subodh D. Singh on behalf of JPMorgan. Singh's signature was notarized by Sharon L. Gearheart in Franklin County, Ohio. According to the notarization, Gearhart is a notary public in the State of Ohio, and her commission expired on October 7, 2008. Attached to the assignment is a document that reads:

> "GOVERNMENT CODE 27361.7
> "I certify under penalty of perjury that the notary seal on the document to which this statement is attached reads as follows:
> "Name of Notary <u>Sharon L. Gearheart</u>
> "Date Commission Expires <u>10/07/08</u>     Commission # _____
> "County of Commission _____          Mfg. I.D. # ____
> "State of Commission <u>OH</u>
> "<u>6/11/08</u>_____          [signature]_____
> "Date and Place                    Signature (Firm name, if any)
> "Auburn, CA"

The document is signed, but the signature is illegible.

In March 2010, at Chase or JPMorgan's suggestion, plaintiff began pursuing a loan modification. Over the next few months, plaintiff provided Chase or JPMorgan with various documents. Frustrated with the lack of progress, in August 2010, plaintiff contacted Chase or JPMorgan and one of Chase or JPMorgan's agents erroneously told plaintiff that he must go into default to get a principal reduction modification. Relying on the agent's advice, plaintiff quit making his monthly loan payments.[2]

---

[2] In the introductory section of the first amended complaint, plaintiff alleges he pursued a loan modification with Chase and that one of Chase's agents advised him to go into default. In alleging the fraud cause of action, however, plaintiff alleges he pursued a loan modification with JPMorgan and one of JPMorgan's agents advised him to go into

On March 30, 2011, a substitution of trustee was recorded designating CRC as trustee in place of First American. The substitution lists Chase as "the present Beneficiary" under the deed of trust and was executed by Colleen Irby on behalf of Chase. Immediately thereafter, CRC recorded a notice of default indicating plaintiff was more than $27,093.90 in arrears.

On May 1, 2011, Chase merged with and into JPMorgan.

On October 11, 2011, CRC recorded a notice of trustee's sale, seeking the unpaid balance of $1,324,454.79. The foreclosure sale was subsequently postponed and apparently has not been rescheduled.

In October 2011 plaintiff filed the underlying action, along with requests for a temporary restraining order and preliminary injunction. The trial court issued a temporary restraining order but denied plaintiff's request for a preliminary injunction. Plaintiff's request for a preliminary injunction was heard by Commissioner Michael A. Jacques, without objection. Meanwhile, defendants demurred to the original complaint, and prior to the hearing on the demurrer, plaintiff filed a first amended complaint.

In the operative first amended complaint, plaintiff asserts causes of action for fraud (first) and breach of fiduciary duty (second) against JPMorgan, and causes of action for breach of trust instrument (third), wrongful foreclosure (fourth), quiet title (fifth), and violations of Business and Professions Code, section 17200 (sixth) against JPMorgan and CRC. Plaintiff seeks: (1) an order compelling defendants to transfer or release legal title to plaintiff; (2) a declaration and determination that plaintiff is the rightful holder of title to the property and that defendants have "no estate, right, title or interest" in the same; (3) a judgment enjoining defendants from claiming any "estate, right, title or interest" in the property; (4) a declaration that the foreclosure is illegal and void and that further

---

default. In his briefing on appeal, plaintiff asserts he was dealing with Chase. Whether it was Chase or JPMorgan does not change our analysis of the issues raised on appeal.

4

proceedings in connection therewith be enjoined; (5) attorney fees; and (6) actual, compensatory, and punitive damages.

Defendants demurred to the first amended complaint, asserting each and every cause of action alleged therein failed to state facts sufficient to constitute a cause of action. (Code Civ. Proc., § 430.10, subd. (e).) Defendants also requested the trial court take judicial notice of various documents, including: the deed of trust recorded on June 21, 2006; the substitution of trustee recorded on June 5, 2008; the assignment of deed of trust; the substitution of trustee recorded on March 30, 2011; the certificate of merger of Chase with and into JPMorgan; the notice of default recorded March 30, 2011; and the notice of trustee's sale recorded on October 11, 2011. (Evid. Code, §§ 452, subds. (g) & (h), 453.)

After defendants filed their demurrer, plaintiff retained new counsel, and approximately two weeks prior to the hearing on the demurrer, plaintiff filed a "non-stipulation" to the commissioner "for the remainder of this matter."

The trial court (Commissioner Jacques) determined plaintiff's "non-stipulation" to the commissioner was untimely, granted the requests for judicial notice over plaintiff's objections, and sustained the demurrer to the first amended complaint without leave to amend. The court concluded, inter alia, that plaintiff's fraud cause of action lacked the requisite specificity, and his breach of fiduciary duty cause of action "is devoid of facts alleging a special relationship between Plaintiff and Defendants." The court determined plaintiff's breach of trust instrument cause of action failed to state a claim because, contrary to plaintiff's assertion, Civil Code section 2924 allows a trustee, mortgagee, beneficiary, or any authorized agent to initiate the foreclosure process, plaintiff failed to allege facts sufficient to show he was prejudiced by any imperfections in the foreclosure process, a deed of trust need not be recorded, and plaintiff lacked standing to challenge defendants' authority to initiate the foreclosure process. The court found plaintiff failed to state a cause of action for wrongful foreclosure because "the allegations are based

5

upon the rescinded Notice of Default," and plaintiff failed to allege the property had been sold or that he was otherwise prejudiced by any imperfections in the foreclosure process. The court found plaintiff failed to state a cause of action for quiet title because he failed to allege tender or the ability to tender. The court further found plaintiff lacked standing to pursue his quiet title cause of action, which essentially challenges defendants' authority to initiate the underlying foreclosure proceeding. The trial court found plaintiff's cause of action for violations of section 17200 of the Business and Professions Code fails to allege facts sufficient to support any of the statutory elements. Finally, the trial court dismissed the first amended complaint without leave to amend because plaintiff failed to show the deficiencies in the first amended complaint could be remedied by amendment.

### DISCUSSION

### I
### Plaintiff Implicitly Consented to the Commissioner Presiding Over His Case for All Purposes Other than Trial

Plaintiff first contends "[t]he trial court wrongfully denied [his] non-stipulation to a commissioner to hear the matter." We disagree.

A subordinate judicial officer may serve as a temporary judge only upon the stipulation of the "parties litigant." (Cal. Const., art. VI, § 21; Code Civ. Proc., § 259, subd. (d).)[3] The stipulation may be express or implied by the parties' conduct. (*Foosadas v. Superior Court* (2005) 130 Cal.App.4th 649, 652 (*Foosadas*); *In re Horton*

---

[3] Article VI, section 21 of the California Constitution states: "On stipulation of the parties litigant the court may order a cause to be tried by a temporary judge who is a member of the State Bar, sworn and empowered to act until final determination of the cause." Section 259, subdivision (d) of the Code of Civil Procedure provides in pertinent part: "Subject to the supervision of the court, every court commissioner shall have power to . . . [¶] . . . [¶] . . . [a]ct as temporary judge when otherwise qualified so to act and when appointed for that purpose, on stipulation of the parties litigant."

(1991) 54 Cal.3d 82, 91 [and cases cited therein].)  Conversely, trial courts may appoint officers such as commissioners to perform "subordinate judicial duties."  (Cal. Const., art. VI, § 22.)  " 'These duties require no stipulation.' "  (*Foosadas*, *supra*, 130 Cal.App.4th at p. 654.)

At issue here is Superior Court of Placer County, Local Rules, rule 20.2(b) (rule 20.2(b)), which provides:  "When the regularly scheduled law and motion calendar is heard by a Commissioner, the parties must file written notice indicating whether or not they stipulate to the Commissioner.  Failure to file such notice of stipulation or non-stipulation at least five (5) Court days prior to the hearing date for the motion will be deemed a stipulation to the Commissioner . . . for all purposes other than trial."

Prior to hearing the subject demurrer, Commissioner Jacques, acting as a temporary judge, heard and decided plaintiff's order to show cause regarding a preliminary injunction.  Accordingly, under rule 20.2(b), plaintiff is deemed to have stipulated to the commissioner "for all purposes other than trial."

Relying on our decision in *Foosadas,* plaintiff claims his notice of nonstipulation was timely because it was served more than five days prior to the hearing on the demurrer.  He is mistaken.  In that case, we held "[t]he trial court's attempt to create a rule that a party must object to the participation of a commissioner prior to the first hearing on a case, whether or not the hearing involves the performance of subordinate judicial duties not requiring a stipulation, is without legal foundation."  (*Foosadas, supra*, 130 Cal.App.4th at p. 655.)  We reasoned that "[s]ince neither party to a proceeding involving a subordinate judicial duty need stipulate that a commissioner may preside over it, no stipulation can be implied from the party's participation in it."  (*Ibid.*)

Unlike *Foosadas*, the first hearing at issue here, plaintiff's request for a preliminary injunction, did not involve the exercise of subordinate judicial duties.  (See, e.g., Code Civ. Proc., § 259 [listing subordinate judicial duties that may be performed by court commissioners subject to the court's supervision; ruling on requests for preliminary

7

injunctions not among those listed]; Gov. Code, § 72190 et seq. [same].)  More broadly, hearing and disposing of law and motion matters rarely, if ever, involves the performance of subordinate judicial duties.  (See, e.g., Code of Civ. Proc., § 259; Gov. Code, § 72190 et seq.)  Plaintiff does not contend otherwise.  Thus, *Foosadas* is factually distinguishable from the present action.

In his reply brief, plaintiff argues rule 20.2(b) "does not contain language that because previous hearings had been in front of a commissioner . . . [plaintiff's] right was waived for the entirety of the litigation."  We disagree.  Rule 20.2(b) plainly states that the failure to file written notice indicating whether or not a party stipulates to the commissioner "at least five (5) Court days prior to the hearing date for the motion will be deemed a stipulation to the Commissioner . . . *for all purposes other than trial*."  (Italics added.)  If, as plaintiff asserts, a party "may file a non-stipulation for any motion hearing as long as it is five days before the hearing date for the motion," the phrase "for all purposes other than trial" would be superfluous, a result we must avoid in construing the rule.  (See *Regents of University of California v. Superior Court* (2013) 220 Cal.App.4th 549, 565.)

Finally, plaintiff argues that he never "expressly or impliedly stipulated to Commissioner Jacques hearing this matter," and thus, "was deprived of his due process rights under the California Constitution."  As previously discussed, plaintiff impliedly stipulated to the commissioner hearing this matter "for all purposes other than trial" when he failed to object to the commissioner hearing his motion for preliminary injunction.  Moreover, we fail to see how the commissioner hearing defendants' demurrer following such a stipulation violates plaintiff's right to due process "since the commissioner takes on the mantle of a regularly appointed superior court judge in presiding over the trial and applies all the usual rules and procedures applicable in such a proceeding."  (*In re Horton, supra*, 54 Cal.3d at pp. 100-101.)

8

In sum, the trial court properly rejected plaintiff's nonstipulation to the commissioner as untimely.

## II
## The Trial Court Did Not Take Judicial Notice of Disputed Factual Statements Contained in the Documents it Judicially Noticed

Plaintiff contends the trial court erred in taking judicial notice of "various factual statements" contained in documents it judicially noticed. He is mistaken.

" ' "Judicial notice is the recognition and acceptance by the court, for use by the trier of fact or by the court, of the existence of a matter of law or fact that is relevant to an issue in the action without requiring formal proof of the matter." ' [Citation.] 'In determining the sufficiency of a complaint against demurrer a court will consider matters that may be judicially noticed.' [Citation.] A court may take judicial notice of something that cannot reasonably be controverted, even if it negates an express allegation of the pleading. [Citation.] This includes recorded deeds. [Citation.][4] [¶] However, the fact a court may take judicial notice of a recorded deed, or similar document, does not mean it may take judicial notice of factual matters stated therein. [Citation.]" (*Poseidon Development, Inc. v. Woodland Lane Estates, LLC* (2007) 152 Cal.App.4th 1106, 1117 (*Poseidon*).)

"When a court is asked to take judicial notice of a document, the propriety of the court's action depends upon the nature of the facts of which the court takes notice from the document." (*Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 265 (*Fontenot*).) "[A] court may take judicial notice of the fact of a document's recordation,

---

**4** Evidence Code section 452, subdivisions (g) and (h), respectively, permit a court, in its discretion, to take judicial notice of "[f]acts and propositions that are of such common knowledge within the territorial jurisdiction of the court that they cannot reasonably be the subject of dispute" and "[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy."

9

the date the document was recorded and executed, the parties to the transaction reflected in a recorded document, and the document's legally operative language, assuming there is no genuine dispute regarding the document's authenticity. From this, the court may deduce and rely upon the legal effect of the recorded document, when that effect is clear from its face." (*Ibid.*)

"In *Poseidon*, . . . the court affirmed the trial court's taking judicial notice, in sustaining a demurrer, of the parties, dates, and legal consequences of a series of recorded documents relating to a real estate transaction. [Citation.] Although the court recognized that it would have been improper to take judicial notice of the truth of statements of fact recited within the documents, the trial court was permitted to take judicial notice of the legal effect of the documents' language when that effect was clear. [Citation.]" (*Fontenot, supra,* 198 Cal.App.4th at p. 265.) More particularly, the court found the trial court was permitted to take judicial notice of the legal effect of an assignment of deed of trust as transferring Poseidon's beneficial interest in the note and deed of trust to another entity where the validity of the assignment was not in dispute and its legal effect was clear. (*Poseidon, supra,* 152 Cal.App.4th at p. 1117.) On the other hand, the court observed that although the substitution of trustee recited that Shanley was the " 'present holder of beneficial interest under [the] Deed of Trust,' " "the court does not take judicial notice of this fact" by taking judicial notice of the substitution "because it is hearsay and it cannot be considered not reasonably subject to dispute." (*Id.* at p. 1118.)

In *Fontenot,* the court concluded the trial court did not err at the demurrer stage in taking judicial notice of the identity of the beneficiary of a deed of trust, based on the designation of the beneficiary in the deed of trust, "since its status was not a matter of fact existing apart from the document itself." (*Fontenot, supra*, 198 Cal.App.4th at p. 266.) As the court explained, ". . . MERS's status as beneficiary was not the type of fact that is generally an improper subject of judicial notice . . . since its status was not a matter of fact existing apart from the document itself. Rather, MERS was the beneficiary under

10

the deed of trust because, as a legally operative document, the deed of trust designated MERS as the beneficiary. Given this designation, MERS's status was not reasonably subject to dispute." (*Ibid.*)

In *Herrera v. Deutsche Bank National Trust Co.* (2011) 196 Cal.App.4th 1366, 1370, 1375 (*Herrera*), relied upon by plaintiff, we held the trial court erred in taking judicial notice of the fact that a foreclosing bank was the beneficiary under a deed of trust where the judicial notice was to be based on a disputed hearsay statement in a substitution of trustee that the bank was the beneficiary (as opposed to the original deed of trust or an assignment that actually made the bank the beneficiary) and a disputed hearsay statement in an assignment of the deed of trust that the predecessor bank was successor to the original beneficiary (which was a hearsay statement that could not establish a chain of title without independent proof).

Here, although plaintiff contends the trial court "took judicial notice of various factual statements made in [defendants'] Requests For Judicial Notice," he fails to identify a single such statement. The closest plaintiff comes to identifying a particular statement is the following: "[T]he documents on their very face contain inconsistencies. For example, the substitution states that the original deed of trust named Chase as beneficiary when it was not Chase . . . ." Plaintiff is correct that it would be impermissible for the court to take judicial notice of Chase's status as the beneficiary under the original deed of trust based on a disputed hearsay statement in a substitution of trustee. (See *Herrera, supra,* 196 Cal.App.4th at p. 1375; *Poseidon, supra,* 152 Cal.App.4th at p. 1117.) There is no indication in the record, however, that the trial court took judicial notice of the fact that Chase was the beneficiary under the original deed of trust based on statements in the substitution of trustee or any other document. Nor is there any indication the trial court took judicial notice of the fact that JPMorgan is the beneficiary and CRC the trustee under the deed of trust at the time the foreclosure was initiated, much less relied on such facts in reaching its decision. Rather, to the extent

11

plaintiff challenged JPMorgan's status as beneficiary and CRC's status as trustee, the court found he lacked standing to do so. It also found that Chase's merger with and into JPMorgan resulted in JPMorgan owning Chase's rights in the subject property without further transfer under California law.

In sum, the trial court did not abuse its discretion in taking judicial notice of the challenged documents.

III

The First Amended Complaint Fails to State a Cause of Action for Quiet Title

Plaintiff contends the first amended complaint states a cause of action for quiet title because it questions the legality of the nonjudicial foreclosure.[5]  As we shall explain, the fifth cause of action for quiet title challenges defendants' authority to initiate the underlying foreclosure, and a borrower, such as plaintiff, may pursue such a claim only if he or she alleges a specific factual basis for the claim. (*Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1154 (*Gomes*); *Siliga v. Mortgage Electronic Registration Systems, Inc.* (2013) 219 Cal.App.4th 75, 82-83 (*Siliga*).)  Because plaintiff's complaint is devoid of any such allegations, the trial court properly sustained the demurrer to the quiet title cause of action.

A demurrer tests the sufficiency of a complaint. (*Los Altos El Granada Investors v. City of Capitola* (2006) 139 Cal.App.4th 629, 650.)  On appeal from an order of dismissal after an order sustaining a demurrer, our standard of review is de novo, i.e., we exercise our independent judgment about whether the complaint states a cause of action as a matter of law. (*Ibid.*)  " ' "We treat the demurrer as admitting all material facts

---

[5]  Plaintiff does not assert that his remaining causes of action are sufficient to state a cause of action or argue that the trial court erred in sustaining the demurrer as to those remaining causes of action.  Rather, he asserts the trial court erred in dismissing the first amended complaint without leave to amend.  That argument is addressed below in section IV, *post*.

12

properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.]' " (*Herrera v. Federal National Mortgage Assn.* (2012) 205 Cal.App.4th 1495, 1501.)

"California's nonjudicial foreclosure scheme is set forth in Civil Code sections 2924 through 2924k, which 'provide a comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust.' [Citation.] 'These provisions cover every aspect of exercise of the power of sale contained in a deed of trust.' [Citation.] 'The purposes of this comprehensive scheme are threefold: (1) to provide the creditor/beneficiary with a quick, inexpensive and efficient remedy against a defaulting debtor/trustor; (2) to protect the debtor/trustor from wrongful loss of the property; and (3) to ensure that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser.' [Citation.] 'Because of the exhaustive nature of this scheme, California appellate courts have refused to read any additional requirements into the non-judicial foreclosure statute.' [Citations.]" (*Gomes, supra,* 192 Cal.App.4th at p. 1154.)

"California courts have refused to allow trustors to delay the nonjudicial foreclosure process by pursuing preemptive judicial actions challenging the authority of a foreclosing 'beneficiary' or beneficiary's 'agent.' [Citations.] Such an action is 'preemptive' if the plaintiff alleges no 'specific factual basis' for the claim that the foreclosure was not initiated by the correct person. [Citation.] A preemptive suit does not seek a remedy for specified misconduct in the nonjudicial foreclosure process, which may provide a basis for a valid cause of action. Instead, a preemptive suit seeks to create an additional requirement for the foreclosing party, apart from the comprehensive statutory requirements, by requiring the foreclosing party to demonstrate in court that it is

13

authorized to initiate a foreclosure." (*Siliga, supra,* 219 Cal.App.4th at p. 82-83; see also *Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079, 1094 (*Glaski*).)

Plaintiff's fifth cause of action for quiet title states in pertinent part: "The real party in interest on the lender's side may be the owner of the asset-backed security issued by the servicing and pooling vendor, the insurer through some claim equitable interests, or the Federal Government through the United States Department of the Treasury or the Federal Reserve. . . . [¶] . . . Defendants claim an interest in the property. However, Defendants' claims are without any right whatsoever, and said Defendants have no legal or equitable rights, claim, or interest in said property." While far from clear, we understand plaintiff to allege that the securitization of his loan somehow deprived defendants of any interest they may have had in the loan.

A lender or trustee does not lose its interest in the loan when it "[i]s packaged and resold in the secondary market, where it [i]s put into a trust pool and securitized." (*Lane v. Vitek Real Estate Indus. Group* (E.D.Cal. 2010) 713 F.Supp.2d 1092, 1099.) Accordingly, the securitization of plaintiff's loan did not deprive defendants of any interest in the loan. With respect to plaintiff's more general claim that defendants do not have an interest in the property, as detailed above, this type of nonspecific allegation is insufficient. Absent a specific factual basis, claims such as this, that essentially challenge a defendant's authority to initiate the foreclosure, are invalid and subject to demurrer. (See *Siliga, supra*, 219 Cal.App.4th at p. 84.)

In addition to the abovementioned allegations, the quiet title cause of action incorporates all prior allegations set forth in the first amended complaint. In the section entitled "Allegations Common to All Causes of Action," the first amended complaint alleges that the assignment of deed of trust from JPMorgan to Chase "was improperly and illegally executed and [gave] no legal rights to the alleged assignee." More specifically, it states that the assignment "was allegedly signed by 'Subdodh [*sic*] D Singh' as Vice President of [JPMorgan], but there are questions about the authenticity of this assignment

14

because; there is no available record of Mr. Singh's position with [JPMorgan]; the notary verifying the signature is an Ohio notary; there is a certification of the notary apparently signed in California; and the address for mailing the document is in Texas."

Assuming for argument's sake that Singh was not employed by JPMorgan or otherwise authorized to act on its behalf when he executed the assignment, the assignment, at best, is voidable at the election of JPMorgan. (See *Mortgage Associates, Inc. v. Fidelity & Deposit Co. of Maryland* (2002) 105 Cal.App.4th 28, 38, fn. 5 (*Mortgage Associates*) ["The fact that the loans and resulting deeds of trust were obtained by fraud or forgery would make the deeds voidable, not void . . . ."]; see also *Reinagel v. Deutsche Bank Nat'l Trust Co.* (5th Cir. 2013) 722 F.3d 700, 706-707 ["a contract executed on behalf of a corporation by a person fraudulently purporting to be a corporate officer is, like any other unauthorized contract, not void, but merely voidable at the election of the defrauded principal"].) Plaintiff does not allege that JPMorgan has chosen to void the assignment, and a borrower cannot challenge an assignment of his or her note and deed of trust if the defect asserted would render the assignment voidable, as opposed to void. (*Glaski, supra*, 218 Cal.App.4th at p. 1095.) Thus, Singh's alleged lack of authority does not furnish plaintiff with a basis to challenge the assignment.

The same is true with respect to plaintiff's allegation concerning the mailing address listed on the assignment and the notary. The assignment states that it was recorded at the request of First American, and that First American instructed the recorder to mail the document "when recorded" to First American. The address listed for First American in the assignment is the same address listed for it in the substitution of trustee. We find nothing unusual about a trustee instructing a county recorder to mail the assignment to the trustee when recorded.

Plaintiff's allegation that "there is a certification of the [Ohio] notary apparently signed in California" also is of no consequence. The certification was made pursuant to Government Code section 27361.7 which states in pertinent part: "Whenever the text of

15

a document presented for record may be made out but is not sufficiently legible to reproduce a readable photographic record, *the recorder may require* the person presenting it for record . . . to prepare a legible copy of the first document by handwriting or typewriting and attach the same to the original as a part of the document for making the permanent photographic record.  The handwritten or typewritten legible copy *shall be certified by the party creating the copy* under penalty of perjury as being a true copy of the original.  As used in this section, the word 'text' includes the notary seal, certificates, and other appendages thereto."  (Italics added.)  In accordance with that code section, the certification at issue here states that "the notary seal on the document to which this statement is attached reads as follows: . . . ."  Insofar as the assignment was recorded in Placer County, it is hardly surprising that the certification, which necessarily was done at the request of the Placer County Recorder, was executed in Auburn, California, the location of the Placer County Recorder's Office.

In the third cause of action for breach of trust instrument, the first amended complaint alleges: "Per the Deed of Trust, only the Lender can invoke the foreclosure.  Per the Deed of Trust, the Lender may appoint a trustee.  The Substitution of Trustee in this case is void, due to fraud, and was not executed in compliance with . . . Civil Code § [2934a].[**6**]  The Substitution of Trustee was invalid also because it was not executed by the Lender, per requirement of the Deed of Trust."

There are two substitutions of trustee in this case; yet, plaintiff fails to specify which substitution he is challenging.  The first, recorded June 5, 2008, purports to

---

**6** Plaintiff cites to Civil Code section 2934, subdivision (a); however, that section does not contain any subdivisions.  We presume he meant to cite to Civil Code section 2934a.  It states in pertinent part:  "The trustee under a trust deed . . . may be substituted by the recording in the county in which the property is located of a substitution executed and acknowledged by: (A) all of the beneficiaries under the trust deed, or their successors in interest . . . ."  (Civ. Code, § 2934a, subd. (a)(1).)

16

substitute First American as trustee in place of Placer Title Company. It was executed by Chet Sconyers on behalf of JPMorgan, the undisputed lender under the deed of trust at that time. The second substitution, recorded on March 30, 2011, purports to substitute CRC in place of First American. It was executed by Colleen Irby on behalf of Chase. While plaintiff disputes that Chase was the lender under the deed of trust at that time, alleging the assignment of deed of trust from JPMorgan to Chase is invalid as detailed above, he has failed to allege a specific factual basis for his claim. Thus, he likewise has failed to allege a specific factual basis for his claim that the substitution was not executed by the lender as required under Civil Code section 2934a. Moreover, we need not determine which substitution plaintiff seeks to challenge or whether that substitution was obtained by fraud or forgery because even assuming one or both of the substitutions were so obtained, they are voidable, not void (*Mortgage Associates, supra,* 105 Cal.App.4th at p. 38, fn. 5), and plaintiff has not alleged that JPMorgan or Chase has chosen to void one or both of the substitutions. Accordingly, plaintiff is precluded from challenging them on that basis. (*Glaski, supra,* 218 Cal.App.4th at p. 1095.)

Having reviewed the allegations in the first amended complaint, we find plaintiff has failed to allege a specific factual basis for his claim that defendants lacked authority to initiate the underlying foreclosure proceeding.

Relying on our decision in *Herrera, supra,* 196 Cal.App.4th at page 1370, plaintiff insists the first amended complaint states a cause of action for quiet title because "it does basically question the legality of the non-judicial foreclosure sale . . . ." Plaintiff's reliance on *Herrera* is misplaced.

In *Herrera*, the plaintiffs lost their home to a nonjudicial foreclosure sale and sued to set aside that sale, arguing the parties that conducted the sale, Deutsche Bank National Trust Company (Deutsche Bank) and CRC, were not the beneficiary and trustee, respectively, under a deed of trust secured by their property, and thus lacked authority to conduct the sale. (*Herrera, supra*, 196 Cal.App.4th at pp. 1368-1369.) The defendants

17

moved for summary judgment, claiming the undisputed evidence showed the loan was in default, Deutsche Bank was the beneficiary under the deed of trust and CRC was the trustee. (*Id.* at p. 1369, 1371.) To establish that CRC was the trustee and thus had authority to conduct the trustee's sale, the defendants requested the trial court judicially notice various recorded documents, including an assignment of deed of trust and a substitution of trustee, both recorded in 2009, that purported to show that Deutsche Bank was the beneficiary under a 2003 deed of trust and, as such, had the power to substitute CRC as trustee. (*Id.* at pp. 1370, 1371-1372.) However, neither document established that Deutsche Bank was the beneficiary under a 2003 deed of trust. (*Id.* at p. 1371.) The assignment recited only that JPMorgan, successor in interest to Washington Mutual Bank, successor in interest to Long Beach Mortgage Company, assigned all beneficial interest under the 2003 deed of trust to Deutsche Bank. (*Ibid*.) As we explained: "The recitation that JPMorgan Chase Bank is the successor in interest to Long Beach Mortgage Company, through Washington Mutual, is hearsay. Defendants offered no evidence to establish that JPMorgan Chase Bank had the beneficial interest under the 2003 deed of trust to assign to [Deutsche] Bank. The truthfulness of the contents of the assignment of deed of trust remains subject to dispute [citation], and plaintiffs dispute the truthfulness of the contents of all of the recorded documents." (*Id.* at p. 1375.) "Because defendants failed to present facts to establish that [Deutsche] Bank was beneficiary and CRC was trustee under the 2003 deed of trust, and therefore had authority to conduct the foreclosure sale, triable issues of material fact remain," and the trial court erred in granting summary judgment. (*Id.* at p. 1378, italics added.)

Like the present action, the plaintiffs in *Herrera* challenged the defendants' authority to initiate the foreclosure. (*Herrera, supra*, 196 Cal.App.4th at pp. 1368-1369.) Unlike the present action, however, in *Herrera*, which involved a summary judgment, the parties did not raise, and we did not consider, whether the plaintiffs had alleged a specific factual basis for their claim that the foreclosure was not initiated by the correct entities as

18

required under *Gomes* and its progeny. Cases are not authority for propositions not considered. (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1176.) Accordingly, *Herrera* is not authority for the proposition that merely questioning the legality of a nonjudicial foreclosure sale is sufficient to allege the beneficiary or trustee lacked authority to initiate a foreclosure. Rather, as detailed above, absent a specific factual basis, allegations the beneficiary or trustee under a deed of trust lacked authority to initiate the foreclosure amount to a preemptive claim seeking to require the foreclosing party to demonstrate in court its authority to initiate a foreclosure, and such a claim is invalid and subject to demurrer. (*Siliga, supra,* 219 Cal.App.4th at p. 84.) Such specific allegations are lacking here.

Finally, plaintiff insists he may pursue his quiet title cause of action because he is seeking a remedy for misconduct. As plaintiff correctly notes, in *Gomes*, the court acknowledged, in a footnote, that " ' . . . California courts have repeatedly allowed parties to pursue additional remedies for misconduct arising out of a nonjudicial foreclosure sale when not inconsistent with the policies behind the statutes' [citation] . . . ." (*Gomes, supra*, 192 Cal.App.4th at p. 1154, fn. 5.) Plaintiff, however, fails to identify any misconduct on the part of defendants apart from defendants allegedly initiating the subject foreclosure proceeding without the authority to do so. Instead, he references the court's decision in *Ragland v. U.S. Bank National Assn.* (2012) 209 Cal.App.4th 182 (*Ragland*) and observes that it involved "facts similar to those at bar . . . ." In that case, the court reversed summary judgment in a borrower's suit against foreclosing parties on various tort causes of action. (*Id.* at p. 187.) That case did not involve a quiet title cause of action (*ibid*.), and plaintiff does not argue that it authorizes him to pursue a quiet title cause of action. Rather, he simply observes that the case is similar to this one in that plaintiff "was told to miss payments, otherwise they would not be able to work with him." As we shall explain, *Ragland* is of no assistance to plaintiff here.

19

In his quiet title action, plaintiff seeks a declaration that title to the property is vested in him alone, that defendants have no estate, right, title, or interest in the property, and that defendants are forever enjoined from asserting any estate, right, title, or interest in the same. Plaintiff fails to cite to, and we are not aware of, any authority that would support a finding that the *remedy* for misconduct of the type apparently at issue here, i.e., instructing plaintiff to default on his loan in order to receive a principal reduction modification, is to quiet title in plaintiff's favor. Thus, *Ragland* does not support plaintiff's contention that the first amended complaint states a cause of action for quiet title.

Moreover, *Ragland* is readily distinguishable from this case on the facts. In that case, the plaintiff presented evidence that she was told to miss a loan payment in order to qualify for a loan modification and that the lender would not attempt to collect from her until another matter related to her loan had been investigated by the lender's legal department. (*Ragland, supra*, 209 Cal.App.4th at p. 188.) After the plaintiff failed to make her loan payment, the lender sent her a letter stating her loan payment was delinquent. (*Ibid.*) When she contacted the lender, she was told that collection activities were " 'frozen' " and that the lender could not accept any further loan payments from her during the investigation. (*Id.* at pp. 189, 188.) Thereafter, the lender sent the plaintiff a letter entitled " 'Notice of Intent to Foreclose.' " (*Id.* at p. 189.) When she contacted the lender, she was told the legal department had failed to place a red flag on the loan and that it should have never been placed in foreclosure. (*Ibid.*) Three days later, the lender instructed the trustee to initiate foreclosure proceedings. (*Id.* at p. 190.) The trustee recorded a notice of trustee's sale, and the plaintiff's home was sold. (*Id.* at pp. 190-191.) At the time of the foreclosure sale, the plaintiff could have tendered the back payments under the note. (*Id.* at p. 191.)

Like the plaintiff in *Ragland,* plaintiff in the present action allegedly was told he must go into default in order to get a principal reduction modification. The similarity

20

with *Ragland* ends there, however. Unlike the plaintiff in *Ragland*, plaintiff in the present action was never told the lender would not attempt to collect the loan should he stop making payments or that the foreclosure proceedings were on hold. Nor has plaintiff alleged that his home has been sold. To the contrary, he does not dispute defendants' representation that the property has not been sold due to the pending litigation. Given these critical factual distinctions, *Ragland* is of no assistance to plaintiff here.

In sum, the first amended complaint fails to state a cause of action for quiet title, and the trial court properly sustained defendants' demurrer as to that cause of action.[7]

## IV
### The Trial Court Acted Well Within its Discretion in Dismissing the First Amended Complaint Without Leave to Amend

Lastly, plaintiff contends that he "raised additional allegations in good faith that he never had the opportunity to add to an amended complaint or to seek leave to amend," and on that basis asserts he should have been granted leave to amend. As we shall explain, none of these additional allegations is of any legal consequence and thus cannot cure any of the defects in his first amended complaint. Accordingly, the trial court properly dismissed the first amended complaint without leave to amend.

When, as here, a demurrer has been sustained without leave to amend, we decide whether there is a reasonable possibility the defect can be cured by amendment. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.) If it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. (*Ibid.*) "The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

---

[7] Because we conclude plaintiff failed to allege a specific factual basis for his claim that defendants lacked authority to initiate the underlying foreclosure, we need not consider his claim that the trial court erred in concluding he was required to allege tender or the ability to tender the amounts owed in order to state a cause of action for quiet title.

21

In his briefing on appeal, plaintiff points to various allegations he states he would include if granted leave to amend. He does not, however, attempt to explain how these allegations would cure the various defects identified by the trial court (and not challenged by plaintiff, except with respect to his quiet title cause of action). Nor does he specify which causes of action he intends to amend with these allegations. It is not up this court to figure out how the complaint can be amended to state a cause of action. (Weil & Brown, California Practice Guide: Civil Procedure Before Trial (The Rutter Group 2012) ¶ 7:130, pp. 7(I)-51 to 7(I)-52 (rev. #1, 2011).) "Rather, the burden is on the plaintiff to show in what manner he or she can amend the complaint, *and how that amendment will change the legal effect of the pleading*." (*Ibid*., italics added, original italics omitted; see also *Medina v. Safe-Guard Products, Internat., Inc.* (2008) 164 Cal.App.4th 105, 112, fn. 8.) Plaintiff has failed to meet this burden here. In any event, none of these allegations is of any legal consequence.

Plaintiff claims he "specifically alleged [in his opposition to the demurrer] that the proper party was not before this Court and that [JPMorgan] does not have [a] beneficial interest [in the deed of trust] because it was not assigned to them." While far from clear, plaintiff appears to assert that Chase's merger with and into JPMorgan is insufficient to establish JPMorgan's status as a beneficiary under the deed of trust absent a writing evidencing the transfer of the deed of trust from Chase to JPMorgan. He is mistaken.

"Upon merger pursuant to this chapter the separate existence of the disappearing corporations ceases and the surviving corporation shall succeed, *without other transfer*, to all the rights and property of each of the disappearing corporations and shall be subject to all the debts and liabilities of each in the same manner as if the surviving corporation had itself incurred them." (Corp. Code, § 1107, italics added; see also *Jackson v. Continental Tel. Co.* (1963) 212 Cal.App.2d 510, 513.) In support of his claim that Chase may not "actually ha[ve] [plaintiff's] loan obligation to assume by merger," plaintiff states: "The loan must be booked as both an asset and a liability under Financial Accounting

22

Standards Board (FASB) Statement 140, which comports to the Generally Accepted Accounting Principles (GAAP), that all banks are required to follow in their accounting practices. Otherwise, an 'in-substance defeasance' is present and the loan was not an asset in its entirety of Chase at the time of the merger/acquisition." We do not understand and decline to address this undeveloped argument. (See *In re R.H.* (2009) 170 Cal.App.4th 678, 704.)

Plaintiff also seeks to add an allegation "that the [defendants] cannot produce any competent evidence that the signatures executing the documents on the record are with personal, firsthand knowledge of the contents or the persons acting on their behalf had the authority to bind the company. Each of the documents recorded were done by the alleged trustees without proof of authorization from either of the alleged beneficiaries. The instrument that allegedly substituted CRC as trustee was actually signed by a CRC employee purporting to be a Vice President of [JPMorgan]. Simply because CRC purports to be acting on [JPMorgan]'s behalf does not ratify or authorize their conduct to bind the company — nor does it somehow make [JPMorgan] the actual beneficiary."

There is no requirement that those executing the "documents on the record," i.e., the assignment, substitutions, or notice of default, act with personal, firsthand knowledge. (Civ. Code, §§ 2924, subd. (a)(1), 2934a; see also *Mabry v. Superior Court* (2010) 185 Cal.App.4th 208, 233-234 (*Mabry*).) Moreover, assuming for argument's sake that those executing the "documents on the record" lacked "authority to bind the company," the documents, at best, were voidable at the election of the "company." (*See Mortgage Associates, supra,* 105 Cal.App.4th at p. 38, fn. 5.) Plaintiff does not allege that either of the alleged beneficiaries, namely JPMorgan or Chase, has chosen to void any of the recorded documents, and plaintiff is precluded from challenging the validity of such documents if the defect asserted would render them voidable, as opposed to void. (See, e.g., *Glaski, supra,* 218 Cal.App.4th at p. 1095.) Thus, the signatories' alleged lack of

23

authority does not furnish plaintiff with a basis to challenge the assignment, substitutions, or notice of default.

Plaintiff seeks to add an allegation that "[t]he note was sold by [JPMorgan] to a secondary market entity and they could have retained no interest." As previously discussed, a lender or trustee does not lose its interest in the loan when it "[i]s packaged and resold in the secondary market, where it [i]s put into a trust pool and securitized." (*Lane v. Vitek Real Estate Indus. Group*, *supra*, 713 F.Supp.2d at p. 1099.) Accordingly, this allegation is of no assistance to plaintiff.

Plaintiff seeks to add an allegation that "[t]he signer of the notice of default did not have personal firsthand knowledge of the file; did not review the file personally; does not know the contents of the file; cannot attest under penalty of perjury what the actual default is or ever if there is an actual default on the loan." There is no requirement that a notice of default be executed under penalty of perjury or by someone with personal knowledge of the file. (Civ. Code, §§ 2924, subd. (a)(1); see also *Mabry, supra,* 185 Cal.App.4th at pp. 233-234.) Accordingly, this allegation is of no assistance to plaintiff.

Plaintiff seeks to add an allegation that "[t]hey are not the authorized agent and do not have the power to bind the company." This type of nonspecific challenge to defendants' authority is barred by *Gomes* and its progeny. (*Gomes, supra,* 192 Cal.App.4th at p. 1154; *Siliga, supra,* 219 Cal.App.4th at p. 82-83; *Glaski, supra,* 218 Cal.App.4th at p. 1094.) Accordingly, this allegation is of no assistance to plaintiff.

Plaintiff seeks to add an allegation that "Colleen Irby signs thousands of documents without personal knowledge of the contents or any verification." " '[C]ourts have consistently refused to find that a plaintiff can state a claim on the basis of a conclusory allegation of robo-signing, absent some factual support.' " (*Bergman v. Bank of Am., N.A.* (N.D. Cal. Oct. 23, 2013, No. C-13-00741 JCS) 2013 U.S. Dist. LEXIS

24

153173, 50-51 [collecting cases].)[8] Here, Irby executed the substitution of trustee substituting CRC as the trustee in place of First American. There is no requirement that a substitution of trustee be executed by someone with personal knowledge. (Civ. Code, § 2934a.) Accordingly, this allegation is of no assistance to plaintiff.

Plaintiff seeks to add an allegation that "[t]here are multiple sets of accounting books in regards to [plaintiff's] loan." Plaintiff makes no attempt to explain this allegation, and we do not understand it. Accordingly, we will not consider it. (See *In re R.H., supra,* 170 Cal.App.4th at p. 704.)

Plaintiff seeks to add an allegation that "[w]here a third party makes payments on behalf of an obligee the debt is extinguished or reduced" under Commercial Code section 3602. Even assuming section 3602 of the Commercial Code applies to this nonjudicial foreclosure, plaintiff does not allege a third party has made any payments on his behalf. Accordingly, this allegation is of no assistance to him.

Finally, plaintiff seeks to add an allegation that he "does not owe money to [JPMorgan] and cannot be in default to them or any of the parties before the Court." Once again, this type of nonspecific challenge to defendants' authority is barred by *Gomes* and its progeny. (*Gomes, supra,* 192 Cal.App.4th at p. 1154; *Siliga, supra,* 219 Cal.App.4th at p. 82-83; *Glaski, supra,* 218 Cal.App.4th at p. 1094.)

Because none of the allegations plaintiff seeks to add are of any legal significance, and thus, do not cure any of the defects in the first amended complaint, the trial court did not abuse its discretion in dismissing the first amended complaint without leave to amend.

---

[8] "Although we may not rely on unpublished California cases, the California Rules of Court do not prohibit citation to unpublished federal cases, which may properly be cited as persuasive, although not binding, authority." (*Landmark Screens, LLC v. Morgan, Lewis & Bockius, LLP* (2010) 183 Cal.App.4th 238, 251, fn. 6, citing Cal. Rules of Court, rule 8.1115.)

DISPOSITION

The judgment is affirmed.  Defendants shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)


                                                                           BLEASE               , Acting P. J.


We concur:


      NICHOLSON          , J.


      BUTZ               , J.